[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————

No. 11-16093

————————

D. C. Docket No. 2:10-cr-00066-JES-SPC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN L. YATES,

Defendant-Appellant.

————————

Appeal from the United States District Court
for the Middle District of Florida

————————

(August 16, 2013)

Before DUBINA, JORDAN and BALDOCK,[*] Circuit Judges.

DUBINA, Circuit Judge:

---

[*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

Appellant John L. Yates ("Yates") appeals his convictions for violating 18 U.S.C. §§ 1519 and 2232(a), which arose out of his harvesting undersized red grouper[1] in federal waters in the Gulf of Mexico. After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we affirm Yates's convictions.

I.

On August 17, 2007, Yates and his crew prepared the *Miss Katie*, a fishing vessel, for a fishing trip into federal waters in the Gulf of Mexico. On August 23, 2007, John Jones ("Officer Jones"), a field officer with the Florida Fish and Wildlife Conservation Commission, who was deputized by the National Marine Fisheries Service ("Fisheries Service") to enforce federal fisheries laws, was on an offshore patrol with fellow officers when he encountered the *Miss Katie*. Officer Jones noticed the *Miss Katie* was actively engaged in a commercial harvest using longline fishing gear, so he approached and boarded the *Miss Katie* to inspect for gear, fishery, and boating-safety compliance.

While on board, Officer Jones noticed three red grouper that appeared to be less than 20 inches in length, the minimum size limit for red grouper at that time.[2]

---

[1] This opinion uses the terms "red grouper," "grouper," and "fish" interchangeably.

[2] In 2007, federal regulations required that harvested red grouper be a minimum of 20 inches in length. 50 C.F.R. § 622.37(d)(2)(ii) (2007). Total overall length was to be determined

2

As a result, Officer Jones decided to measure Yates's fish to determine whether they were of legal size. Officer Jones separated grouper that appeared to be less than 20 inches so he could measure them. He measured the fish with their mouths closed and their tails pinched. Officer Jones gave Yates the benefit of the doubt on the fish that measured close to 20 inches but separated the fish that were clearly under the legal limit and placed those fish in wooden crates. In total, Officer Jones determined that 72 grouper clearly measured less than 20 inches. Officer Jones then placed the wooden crates in the *Miss Katie*'s fish box and issued Yates a citation for the undersized fish. Officer Jones instructed Yates not to disturb the undersized fish and informed Yates that the Fisheries Service would seize the fish upon the *Miss Katie*'s return to port.

Contrary to Officer Jones's directions, Yates instructed his crew to throw the undersized fish overboard. Thomas Lemons ("Lemons"), one of the crewmembers, testified that he complied with Yates's directive. At Yates's prompting, the crew then took other red grouper and placed them in the wooden crates that had held the undersized fish. After the switch was completed, Yates

---

by measuring the fish with its mouth open or closed and its tail squeezed or not squeezed, to give the overall greatest length. *See id.* § 622.2 ("Total length . . . means the straight-line distance from the tip of the snout to the tip of the tail (caudal fin), excluding any caudal filament, while the fish is lying on its side. The mouth of the fish may be closed and/or the tail may be squeezed together to give the greatest overall measurement.").

3

instructed Lemons to tell any law enforcement officers who asked that the fish in the wooden crates were the same fish that Officer Jones had determined were undersized.

After the *Miss Katie* returned to port, Fisheries Service special agent James Kejonen ("Agent Kejonen") traveled to Cortez, Florida to meet Yates and investigate the report of undersized grouper. On August 27, 2007, Officer Jones was called in to re-measure the fish, which he did in the same manner as before—mouths closed and tails pinched. Sixty-nine fish measured less than 20 inches. Officer Jones noticed that, although some of Yates's undersized red grouper had previously measured as short as 18 to 19 inches, none of the grouper unloaded at the dock were that short. In fact, at sea, most of Yates's grouper had measured between 19 and 19 1/2 inches, but at the dock, the majority of the grouper measured close to 20 inches. Due to Officer Jones's suspicion that the undersized fish measured on August 27 were not the same fish he had measured on August 23, federal agents interviewed Lemons, who eventually divulged the crew's nefarious conduct.

At trial, Yates disputed whether the red grouper thrown overboard were actually undersized because Officer Jones had only measured the fish with their mouths closed, not open. In other words, Yates argued it was possible that, had the

4

fish been measured with their mouths open, they would have measured legal size.

The day before trial, the district court held a *Daubert*[3] hearing to evaluate the qualifications of the two grouper-measuring experts proffered by the parties. The government offered Dr. Richard Cody ("Dr. Cody"), a research administrator with the Fish and Wildlife Research Institute, as a potential expert witness. Dr. Cody was prepared to testify that, on average, a grouper measured three to four millimeters longer when its mouth was open versus when its mouth was closed. Yates did not object to that contention, but he did object to other portions of Dr. Cody's testimony. The district court took Dr. Cody's testimony under advisement but did not decide whether he could testify as an expert on measuring grouper. The district court also ruled that Yates's expert, William Ward ("Mr. Ward"), research director for the Gulf Fishermen's Association, could offer testimony about a grouper's measurement with an open mouth as opposed to a closed mouth and about fish shrinkage when placed on ice.

Ultimately, the government did not call Dr. Cody as a witness in its case-in-chief. After the government rested, Yates's counsel announced for the first time that he planned to call Dr. Cody as his first witness to testify about the length of grouper with an open mouth versus a closed mouth. The government objected.

---

[3] *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 113 S.Ct. 2786 (1993).

5

The district court sustained the government's objection, ruling that Yates was precluded from calling Dr. Cody in his case-in-chief because Yates had failed to properly notify the government of his intention to call Dr. Cody as an expert witness, as required by Federal Rule of Criminal Procedure 16. After the district court had made its ruling, Yates called as his first witness Mr. Ward, who testified that fish can shrink on ice and that grouper measure longer with their mouths open than with their mouths closed. On cross-examination, the government questioned Mr. Ward about his own state and federal fishing violations.

At the conclusion of the government's case-in-chief, and at the close of all the evidence, Yates moved for judgment of acquittal on all counts. The district court denied both motions. After a four-day trial, the jury found Yates guilty of (1) knowingly disposing of undersized fish in order to prevent the government from taking lawful custody and control of them, in violation of 18 U.S.C. § 2232(a) (Count I); and (2) destroying or concealing a "tangible object with the intent to impede, obstruct, or influence" the government's investigation into harvesting undersized grouper, in violation of 18 U.S.C. § 1519 (Count II). The district court sentenced Yates to 30 days' imprisonment, followed by 36 months' supervised release. Yates timely appealed his convictions.

II.

6

Yates presents three issues on appeal.  First, Yates argues the district court erred in denying his motion for judgment of acquittal on Counts I and II, because the government failed to present sufficient evidence to prove the fish thrown overboard were undersized.  Second, Yates argues the district court erred as a matter of law in denying his motion for judgment of acquittal on Count II, because the term "tangible object" as used in 18 U.S.C. § 1519 does not apply to fish.  Alternatively, Yates argues the statute is ambiguous and the rule of lenity should apply.  Finally, Yates argues the district court abused its discretion by precluding him from calling Dr. Cody during his case-in-chief.

## III.

"We review *de novo* a district court's denial of a motion for judgment of acquittal on sufficiency of evidence grounds."  *United States v. Pena*, 684 F.3d 1137, 1152 (11th Cir. 2012).  "In reviewing the sufficiency of the evidence, we look at the record in the light most favorable to the verdict and draw all reasonable inferences and resolve all questions of credibility in its favor."  *United States v. White*, 663 F.3d 1207, 1213 (11th Cir. 2011) (internal quotation marks omitted).  We review questions of statutory interpretation *de novo*.  *United States v. Aldrich*, 566 F.3d 976, 978 n.2 (11th Cir. 2009).  Finally, we review the district court's

7

discovery rulings for abuse of discretion.  *Reese v. Herbert*, 527 F.3d 1253, 1262

n.13 (11th Cir. 2008).

IV.

A.  *Sufficient evidence was presented at trial for the jury to conclude the fish thrown overboard were undersized.*[4]

Yates contends that Officer Jones's failure to measure the fish with their

mouths open—as opposed to only measuring them with their mouths closed—

creates speculation as to whether the fish would have measured undersized with

their mouths open.  As such, he argues there was not sufficient evidence for the

jury to conclude the fish thrown overboard were undersized.  We disagree.

First, the testimonial evidence given by Officer Jones, Agent Kejonen, and

Mr. Ward conflicts as to whether measuring a fish with its mouth open, as opposed

to closed, makes a difference in the fish's overall length.  The jury was free to

weigh the conflicting evidence and decide whether opening or closing a fish's

---

[4] While the size of the fish thrown overboard is not an essential element under either 18 U.S.C. § 1519 or § 2232(a), the prosecution failed to object to the district court's charge to the jury regarding the process for determining whether a fish is undersized.  Accordingly, establishing that the fish were "undersized" became necessary for conviction pursuant to the "law of the case" doctrine.  *See United States v. Spletzer*, 535 F.2d 950, 954 (5th Cir. 1976).[5] Thus, in addressing Yates's argument that the district court should have granted his motion for judgment of acquittal as to Counts I and II, the inquiry is whether sufficient evidence was presented at trial to support the jury's finding that the fish thrown overboard were undersized.

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

8

mouth made a large difference, a small difference, or no difference at all in the fish's measurement. *See United States v. Prince*, 883 F.2d 953, 959 n.3 (11th Cir. 1989) ("Weighing the credibility of witnesses . . . is within the province of the jury, and the jury is free to believe or disbelieve any part or all of the testimony of a witness."). Further, Officer Jones testified that while he was on board the *Miss Katie*, Yates scolded his crew for keeping undersized fish and stated, "Look at this fish, it's only 19 inches. How could you miss this one?" [R. 141 at 93.] Similarly, Agent Kejonen testified that, on the dock, Yates admitted to having at least "a few" undersized fish on his boat when Officer Jones measured them days earlier. [*Id.* at 184.] Moreover, that Yates directed his crew to throw the fish overboard creates an inference that he—as an experienced commercial fisherman—believed the fish to be undersized. In sum, a "rational trier of fact could have found . . . beyond a reasonable doubt" that the fish thrown into the Gulf were shorter than the legal limit. *See United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007). Accordingly, we conclude from the record that sufficient evidence was presented at trial for the jury to convict Yates of Counts I and II.

  *B. A fish is a "tangible object" within the meaning of 18 U.S.C. § 1519.*

  Yates contends the district court erred in denying his motion for judgment of acquittal as to Count II because the term "tangible object" as used in 18 U.S.C.

9

§ 1519 "only applies to records, documents, or tangible items that relate to recordkeeping" and "does not apply to . . . fish." [Appellant's Br. at 36.]

"In statutory construction, the plain meaning of the statute controls unless the language is ambiguous or leads to absurd results." *United States v. Carrell*, 252 F.3d 1193, 1198 (11th Cir. 2001) (internal quotation marks omitted). "When the text of a statute is plain, . . . we need not concern ourselves with contrary intent or purpose revealed by the legislative history." *United States v. Hunt*, 526 F.3d 739, 744 (11th Cir. 2008). Further, undefined words in a statute—such as "tangible object" in this instance—are given their ordinary or natural meaning. *Smith v. United States*, 508 U.S. 223, 228, 113 S. Ct. 2050, 2054 (1993). In keeping with those principles, we conclude "tangible object," as § 1519 uses that term, unambiguously applies to fish. *See* BLACK'S LAW DICTIONARY 1592 (9th ed. 2009) (defining "tangible" as "[h]aving or possessing physical form"); *see also United States v. Sullivan*, 578 F.2d 121, 124 (5th Cir. 1978) (noting that cocaine is a "tangible object" subject to examination and inspection under Rule 16(a) of the Rules of Criminal Procedure). Because the statute is unambiguous, we also conclude the rule of lenity does not apply here.

> *C. Yates's right to present a defense was not prejudiced by the district court's ruling that disallowed Yates from calling Dr. Cody during his case-in-chief.*

10

Because Yates waited until the close of the government's case-in-chief to disclose Dr. Cody as an expert witness, the disclosure was untimely under Federal Rule of Criminal Procedure 16(b)(1)(C).  As a sanction for this untimely disclosure, the district court did not allow Dr. Cody to testify during Yates's case-in-chief.  Yates does not dispute that he did not give proper notice to the government pursuant to Rule 16(b)(1)(C).  Instead, Yates argues that the district court should have used a lesser sanction to address his late disclosure, and that the district court's outright preclusion of Dr. Cody's testimony at trial infringed on Yates's constitutional right to present a defense.  According to Yates, Dr. Cody would have reinforced his expert Mr. Ward's testimony that red grouper measure longer with their mouths open than with their mouths closed.  Yates also contends Dr. Cody's corroboration of Mr. Ward's testimony would have countered the government's attempt to discredit Mr. Ward.

"Relief for violations of discovery rules lies within the discretion of the trial court[.]" *United States v. Petrie*, 302 F.3d 1280, 1289 (11th Cir. 2002).  To warrant reversal of the court's discretion on appeal, "a defendant must show prejudice to his substantial rights." *Id.*  While the right of the accused to present a defense is a substantial right, that right is not boundless. *See Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 653 (1988).

11

It is unnecessary for us to determine whether the district court properly exercised its discretion in precluding Dr. Cody from testifying at trial, because we conclude Yates has failed to show the preclusion prejudiced his right to present a defense. As Yates conceded in his brief, his expert Mr. Ward offered the same testimony Yates hoped to elicit from Dr. Cody. Indeed, our review of the record shows Dr. Cody's testimony would have been less favorable to Yates than that of Mr. Ward. Moreover, under the circumstances presented here, Yates's inability to offer Dr. Cody's testimony to rehabilitate Dr. Ward's credibility does not amount to prejudice of his substantial rights.

V.

For the above stated reasons, we affirm Yates's convictions.

**AFFIRMED.**