[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10068
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cr-00230-SDM-AEP-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTONIUS RUSSEL FORD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 4, 2016)

Before HULL, ROSENBAUM and BLACK, Circuit Judges.

PER CURIAM:

Antonius Ford appeals his conviction and sentence for conspiracy to distribute and possess with intent to distribute less than 500 grams of a mixture containing cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(C), and 851. Ford raises several issues on appeal, which we address in turn.[1] After review, we affirm Ford's conviction and sentence.

## I.  DISCUSSION

### A.  *Judgment of acquittal*

Ford first contends the district court erred by denying his motion for a judgment of acquittal as there was insufficient evidence of a conspiratorial, rather than a mere buyer-seller, relationship. He asserts the evidence showed he purchased only "personal-use amounts" of cocaine, and the Government did not prove an intent to distribute the cocaine he purchased from Richard Soler.

Distributing, and possessing with the intent to distribute, cocaine is a violation of 21 U.S.C. § 841(a)(1). To support a conspiracy conviction under 21 U.S.C. § 846, the government must establish beyond a reasonable doubt that there was (1) an agreement between the defendant and one or more persons, (2) the object of which is an offense under Title 21 of the U.S. Code. *United States v. Baker*, 432 F.3d 1189, 1232 (11th Cir. 2005), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813, 821 (2006). The agreement must have the

---

[1] Because we write for the parties, we set out only those facts necessary to explain our decision.

2

same criminal objective, such as the joint objective of distributing drugs. *United States v. Dekle*, 165 F.3d 826, 829 (11th Cir. 1999). A conspiracy may be established circumstantially, and may be inferred from a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser. *United States v. Mercer*, 165 F.3d 1331, 1333, 1335 (11th Cir. 1999). A conspiratorial agreement also may be inferred from circumstances such as multiple transfers in a short time period, a seller fronting drugs to a buyer, and mutual knowledge of sales territories. *United States v. Beasley*, 2 F.3d 1551, 1560-61 (11th Cir. 1993). Nevertheless, when "the buyer's purpose is merely to buy and the seller's purpose is merely to sell, and no prior or contemporaneous understanding exists between the two beyond the sales agreement," there is no conspiracy. *Mercer*, 165 F.3d at 1335.

The district court did not err by denying Ford's motion for judgment of acquittal. *See United States v. Friske*, 640 F.3d 1288, 1290 (11th Cir. 2011) (reviewing *de novo* a district court's denial of a motion for a judgment of acquittal). Drawing all reasonable inferences and credibility choices in the Government's favor, Soler's testimony and the recorded phone conversations permitted a reasonable jury to infer that Ford had a common agreement with Soler to distribute cocaine to customers. Soler's testimony that Ford purchased a half ounce of cocaine from him two to three times per week, and that he once sold Ford

3

cocaine "on credit" based on their working relationship, could lead a reasonable juror to infer that Ford was in a continuing relationship with Soler that resulted in the repeated transfer of illegal drugs and whose object was the unlawful distribution of cocaine. The wiretap evidence reflecting Ford's various requests for a "softball" and to "come eat," and his expression of gratitude to Soler, only buttressed that testimony and the reasonable inference. This was especially so in light of Soler's testimony that "softball" meant powder cocaine, that "come eat" meant to purchase cocaine, and that the expression of gratitude was for his fronting cocaine to Ford. Moreover, Soler's testimony that Ford told him that he was reselling the purchased cocaine to primarily young and white customers in "the Springs," and that the two had discussed their respective profits, could lead a reasonable juror to infer a conspiratorial agreement with the joint unlawful objective of distributing cocaine. The wiretap evidence reflecting Ford's statement that he was "going to go out to Spring Hill and do some target practice," could have buttressed the testimony and an inference of conspiratorial agreement on such a basis.

There was sufficient evidence to support the jury's chosen conclusion that Ford was involved in a conspiracy, and the jury was allowed to choose among multiple reasonable inferences in reaching its verdict. *See id.* at 1291 (explaining the evidence need not be inconsistent with every reasonable hypothesis except

4

guilt, and the jury is free to choose between or among reasonable conclusions that could be drawn from the evidence presented at trial).  Ford's argument the jury's finding of a lesser drug quantity rendered Soler's entire testimony incredible is unavailing, as the jury was permitted to disbelieve Soler's testimony with respect to drug quantity and believe the rest.  *See United States v. Prince*, 883 F.2d 953, 959 n.3 (11th Cir. 1989) (stating a jury may choose to believe or disbelieve any part or all of a witness's testimony).

## B.  *Deprivation of fair trial*

Second, Ford contends the court erred by (1) giving an allegedly confusing and inadequate jury instruction as to the difference between a buyer-seller relationship and a conspiracy, and not giving an instruction on simple possession, a lesser-included offense; (2) not *sua sponte* intervening during the government's closing argument which allegedly improperly suggested incriminating facts beyond the record evidence; and (3) failing to strike, and not instructing the jury to disregard, inadmissible hearsay testimony of the drug dealer from whom he purchased the cocaine at issue as to statements made by other cocaine purchasers, all of which together allegedly cumulatively deprived him of a fair trial.

There is no cumulative error that deprived Ford of a fair trial because the district court did not individually err, plainly or otherwise, based on any of Ford's alleged errors.  *See United States v. Waldon,* 363 F.3d 1103, 1110 (11th Cir. 2004)

(stating where there is no error, or only a singular error, there can be no cumulative error).  As to the court's given jury instruction regarding the nature of the conspiratorial agreement, Ford's statements during the charge conference expressly accepting that instruction, which he noted was "fine" and "better" than a previous version, invited any error, and, thus, waived his ability to challenge the instruction on appeal. *See United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012) (stating where a party expressly accepts a jury instruction, such an action amounts to invited error and serves as a waiver of the right to challenge the instruction on appeal).  As to the court's failure to *sua sponte* instruct the jury regarding simple possession, the court was under no obligation to do so absent a request by Ford. *See United States v. Chandler,* 996 F.2d 1073, 1099 (11th Cir. 1993) (explaining where a defendant does not request an instruction for a lesser-included offense, and fails to object to the omission at trial of such an instruction, it is not error for a district court to fail to *sua sponte* give such an instruction).[2]

As to the court's failure to intervene regarding the prosecutor's remarks in closing argument and rebuttal, Ford has not shown any improper vouching. *See United States v. De La Cruz Suarez*, 601 F.3d 1202, 1218 (11th Cir. 2010) (stating

---

[2]  Ford argues his counsel was ineffective for conceding Ford's drug purchases in his opening statement and failure thereafter to request a theory-of-defense instruction.  However, the record is not sufficiently developed to review that claim on direct appeal. *See United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002) (holding this Court will not consider claims of ineffective assistance of counsel on direct appeal unless the factual record is developed sufficiently to review the claim presented).

to establish improper prosecutorial vouching, a defendant must show that "(1) the prosecutor placed the prestige of the government behind the witness by making explicit [personal] assurances of the witness's credibility, or (2) the prosecutor implicitly vouched for the witness's credibility by implying that evidence not formally presented to the jury supports the witness's testimony").  Apart from the inaccurate statement regarding Ford picking up cocaine at the back, rather than front, of the Café, which involved a specific fact that was immaterial to his involvement in the charged conspiracy, all of the Government's statements to the jury were reasonable inferences that could be drawn from record evidence.  *See United States v. Epps*, 613 F.3d 1093, 1101 (11th Cir. 2010) (explaining where the government merely makes explicit an inference that the jury could reasonably have drawn from the evidence, no improper vouching occurs).  Therefore, the court did not plainly err[3] by not *sua sponte* intervening on the basis of improper vouching. *See United States v. Bernal-Benitez*, 594 F.3d 1303, 1316 (11th Cir. 2010) (reviewing a district court's failure to *sua sponte* intervene and instruct the jury to disregard a prosecutor's statements to the jury for plain error).

As to the court's failure to *sua sponte* instruct the jury to disregard Soler's inadmissible hearsay testimony regarding the subsequent drug sales, Ford has not

---

[3] To establish plain error, an appellant must show: "(1) error, (2) that is plain and (3) that affects substantial rights.  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007).

shown that the lack of any such instruction was plain error. *See United States v. Rixner*, 548 F.2d 1224, 1227-28 (5th Cir. 1977)[4] (reviewing for plain error a court's failure to *sua sponte* give a cautionary instruction to the jury to not consider inadmissible hearsay evidence). Specifically, the Government did not rely on the inadmissible heasay to support its case in chief, and in fact relied directly on Soler's testimony about Ford's own statement that he resold the purchased cocaine at issue to establish that Ford redistributed cocaine as part of the conspiracy. Thus, Ford has not shown that an additional cautionary instruction regarding the inadmissible testimony, beyond the court's ruling sustaining his hearsay objection, would have affected the outcome of his district court proceedings, such that there is not plain error. *See United States v. Richardson*, 233 F.3d 1285, 1288 (11th Cir. 2000) (explaining to show an error affected his substantial rights, a defendant must demonstrate that the error affected the outcome of the district court proceedings). As to the court's failure to strike Soler's inadmissible hearsay testimony upon Ford's request, Ford has offered no explanation for how the court's decision not to formally strike the testimony constituted an abuse of discretion. *See United States v. Woody*, 567 F.2d 1353, 1357 (5th Cir. 1978) (reviewing a court's failure to strike testimony for an abuse of discretion).

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

*C. Sentencing*

Last, Ford contends the court imposed a procedurally unreasonable sentence by sentencing him as a career offender under U.S.S.G. § 4B1.1, as U.S.S.G. § 4B1.2's residual clause defining a qualifying crime of violence is unconstitutionally vague, and his predicate convictions were not charged in his indictment or proved to a jury.

The Supreme Court held the residual clause of the Armed Career Criminal Act (ACCA) was unconstitutionally vague. *See Johnson v. United States*, 135 S. Ct. 2551, 2557-58 (2015). However, this Court has held that *Johnson*'s holding does not apply to the Sentencing Guidelines. *United States v. Matchett*, 802 F.3d 1193-96 (11th Cir. 2015). We reasoned that *Johnson* was limited by its terms to criminal statutes that defined elements of a crime or fixed punishments—neither of which the advisory guidelines did. *Id.* at 1194. Ford's argument the district court was not permitted to rely on the residual clause in sentencing Ford under the career offender guideline is foreclosed by *Matchett*.

Moreover, the district court did not err in determining Ford's prior fleeing-or-eluding conviction under Florida Statutes section 316.1935(2) qualified as a "crime of violence" under § 4B1.2)(a)(2)'s residual clause. This Court analyzed Ford's conviction offense and concluded that it qualified as a "violent felony" under the ACCA's residual clause. *See United States v. Petite*, 703 F.3d 1290,

9

1294-97, 1301 (11th Cir. 2013).  Although *Petite* has been abrogated by *Johnson* to the extent the ACCA's residual clause is unconstitutionally vague, we "must still adhere" to *Petite*'s reasoning as to why Ford's offense would have qualified under the ACCA's residual clause for purposes of determining if his offense qualifies under § 4B1.2(a)(2)'s identical clause.  *See Matchett*, 802 F.3d at 1195-96.  In this instance, as the Court noted in *Petite*, the risks posed by Ford's offense are substantial, as flight from a law enforcement vehicle inherently invites a confrontational response by police officers, such as a high-speed chase, that poses a serious potential risk of physical injury to third persons in the flight's vicinity. *See Petite*, 703 F.3d at 1294-97, 1301.  As such, given the risks posed by the fleeing-or-eluding offense, Ford's prior § 316.1935(2) conviction meets the definition of a "crime of violence" under § 4B1.2(a)(2)'s residual clause.  *See id.*; U.S.S.G. § 4B1.2(a)(2).[5]

Additionally, the Supreme Court in *Almendarez-Torres v. United States*, 523 U.S. 224, 226-27 (1998), held that the government need not allege in its indictment, and need not prove beyond a reasonable doubt, that defendant had

---

[5] Ford's argument this Court should vacate his sentence based on the rule of lenity is without merit.  He identifies no ambiguity that would warrant the application of such a rule.  *See United States v. Smith*, 775 F.3d 1262, 12667 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 2827 (2015) (stating for the rule of lenity to apply to an advisory guideline definition pertinent to a sentencing enhancement, the guideline's text itself would have to be ambiguous).  Further, as to the Government's reliance on Ford's prior Florida felony battery conviction as an alternative basis for affirming his career-offender designation, it is unnecessary for the Court to address this issue.  Only two predicate convictions are needed to qualify as a career offender, and Ford's delivery-of-cocaine and fleeing-or-eluding convictions qualified as predicates.

10

prior convictions in order to use those convictions to enhance a sentence. *Almendarez-Torres* forecloses Ford's argument that his Sixth Amendment rights were violated because his predicate convictions for his career-offender enhancement were not charged in his indictment and proved to a jury.

Accordingly, Ford's sentence was not procedurally unreasonable, and we affirm. *See Gall v. United States*, 552 U.S. 38, 41 (2007) (reviewing the reasonableness of a sentence for abuse of discretion).

**AFFIRMED.**